**In re ZEEWAY CORPORATION, an Arizona corporation, dba Manzanita Raceway, Debtor(s).**

**ZEEWAY CORPORATION,**
Appellant(s),

v.

**RIO SALADO BANK, Appellee(s).**

BAP No. AZ 86–1733–AsEMe.
Bankruptcy No. B 86–1902–PHX–VAG.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Submitted without Oral Argument on Nov. 26, 1986.

Decided March 6, 1987.

John J. Hebert, Beus, Gilbert, Wake, & Morrill, Phoenix, Ariz., for appellant(s).

Michael S. Rubin, Mariscal, Weeks, McIntyre & Friedlander, Phoenix, Ariz., for appellee(s).

## OPINION

Before ASHLAND, ELLIOTT, and MEYERS, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

Debtor appeals the order of the bankruptcy court prohibiting the use of income generated from debtor's business activities. The court determined that the income was cash collateral within 11 U.S.C. § 363(c) and was subject to the rents, issues, and profits clause of the deed of trust held by appellee Rio Salado Bank. We reverse.

## FACTS

Before bankruptcy, the Zeeway Corporation sold real property, commonly known as the Manzanita Speedway, to Bill Krug Enterprises. Krug executed a deed of trust and promissory note to Zeeway to secure the principal of $700,000. As part of the sale Krug borrowed $1 million from Rio Salado Bank. The loan was secured by a deed of trust on the Manzanita property with Zeeway subordinating its deed of trust.

Krug defaulted, and on February 26, 1986 Zeeway purchased the property pursuant to the foreclosure and sale on its second trust deed. Zeeway took over operations conducting auto races at the speedway on weekends. Payments were not made to the Bank, and the the Bank scheduled a sale under its deed of trust.

On May 12, 1986 Zeeway filed a Chapter 11 petition. On May 19, 1986 the Bank objected to the debtor's use of cash collateral and moved for sequestration and segregation of cash collateral. 11 U.S.C. § 363(c), (e). Debtor responded denying that the income, gate receipts generated from post-petition races, was cash collateral. On August 1, 1986 the court denied debtor's motion to use cash collateral finding that the income generated from the races was cash collateral subject to the Bank's deed of trust.

## ISSUE

Whether the bankruptcy court erred in determining that income generated from debtor's business was cash collateral subject to creditor's lien.

## DISCUSSION

The issue on appeal is solely a question of law subject to de novo review. *In re American Mariner,* 734 F.2d 426 (9th Cir. 1984).

Zeeway does not dispute that Rio Salado Bank has a valid, perfected first deed of trust lien on the real property. The deed of trust contains the following "assignment of rents" clause.

> Trustor hereby assigns and transfers to beneficiary all of trustor's right, title and interest in and to all leases, rents, issues, profits or income from the trust property and each and every part thereof, including all present and future leases or rental agreements....

The Bank argues that the gate receipts generated by post-petition races are included within the rents, issues, profits or income clause and are therefore cash collateral within 11 U.S.C. § 363(a). If the funds constitute cash collateral, debtor may not use the income unless the Bank consents or the court authorizes such use. 11 U.S.C. § 363(c)(2).

The court may allow the debtor to use cash collateral after notice and hearing, and upon providing adequate protection for the creditor's interest. The Bank satisfied its burden of proof on the validity and extent of its lien and debtor could not provide assurance of adequate protection of the Bank's interest. *See,* 11 U.S.C. § 363(*o*). The bankruptcy court did not authorize its use.

Debtor argues that the income generated by conducting auto races on the real property does not constitute cash collateral, 11 U.S.C. § 363(a), because the income is not derived from the rental of real property but rather from the business activity conducted thereon. We agree.

Cash collateral includes the proceeds, products, offspring, rents or profits of property subject to a security interest. 11 U.S.C. §§ 363(a) and 552. State law controls whether the Bank's interest in the income generated by debtor's business activities is cash collateral. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.), cert. denied, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). The crux of the question then, is whether under Arizona law the Bank's security interest under the deed of trust extends to the gate receipts.

The Bank cites *D & S Farms v. Producers Cotton Oil Co.,* 16 Ariz.App. 180, 492 P.2d 429 (1972) for the proposition that, in Arizona, under a mortgage assignment of rents, issues, and profits clause the mortgagee had the right to income derived from sale of alfalfa crop grown on the subject land. The case is inapposite. The income derived from the sale of alfalfa is not rent but issues or profit derived from the utilization of the land. Here, we hold that the gate receipt income is not rent derived from the use or occupancy of the raceway. The income from the raceway is not produced by the real property, it is the income from the business operated by Zeeway.

No other Arizona cases are on point, nor are we persuaded by *In re Flower City Nursing Home, Inc.,* 38 B.R. 642 (Bankr. W.D.N.Y.1984) which held that income generated from the rental of bed and living space in a nursing home constituted rent subject to the assignment of rents clause under the deed of trust. Here the income is not attributable to the real property but the services which occur upon the property. We analogize to the income generated by a restaurant or retail store, which although produced in part by the use of the real property upon which business is conducted, the income is not proceeds of the property but the result of the services provided by the business.

In *In re Johnson,* 62 B.R. 24 (9th Cir. BAP 1986) we recognized a secured party's right to sequester rent under an assignment of rents clause but disagreed however with the method of perfection. None-

theless, in *Johnson* the income was the rent from tenants of a trailer court which would constitute cash collateral. The actual facts and the holding of that case would not directly apply here.

In *United States v. PS Hotel Corp.*, 404 F.Supp. 1188 (E.D.Mo.1975) the court, in determining priority of various security interests, held that the income generated by a hotel from the room rates it charged guests did not constitute rent. "Rent" under an assignment of rents clause would not include charges made by the hotel for services provided to patrons even though the services included the providing of rooms. The argument that income generated by providing space to watch races constitutes rent is even more attenuated.

Rent is defined in Black's Law Dictionary as: "Consideration paid for use or occupation of property. Compensation or return of value given at stated times for the possession of lands and tenements corporeal". The income generated from debtor's business activities does not come within the definition.

Because we have determined that the income generated from debtor's business activity is not cash collateral we decline to address the issues raised under 11 U.S.C. § 552. Under § 552, with the exception of proceeds of property acquired before the case, property acquired by the debtor after commencement of the case is not subject to any lien resulting from any pre-case security interest.

We reverse.